IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 12, 2017 Session

**KENNETH KRASOVIC v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Grundy County**
No. 4985     Thomas W. Graham, Judge

_____

**No. M2016-02458-CCA-R3-PC**

_____

A jury convicted the Petitioner, Kenneth Krasovic, of reckless vehicular homicide and five counts of reckless endangerment with a deadly weapon after he decided to pass a truck on a hill and collided with both the truck and an oncoming vehicle. The Petitioner appeals the denial of his post-conviction petition, alleging that he received the ineffective assistance of counsel because his trial attorney presented inadequate expert testimony and advised the Petitioner not to testify at trial. After a thorough review of the record, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Paul D. Cross (on appeal and at hearing) and Howell Clements (at hearing), Monteagle, Tennessee, for the appellant, Kenneth John Krasovic.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Mike Taylor, District Attorney General; and David Shinn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

**Trial**

The State prosecuted the Petitioner under the theory that he chose to pass a Chevy S-10 truck ("the Chevy S-10") on a blind hill in a no-passing zone, resulting in a three-

vehicle accident that endangered five persons present in the vehicles and caused the death of Ms. Sandra Lockhart, who was driving a Pontiac ("the Pontiac") in the opposite direction. The Petitioner tried to show that passing the Chevy S-10 had been an evasive maneuver and that the speed of Ms. Lockhart's Pontiac contributed to the accident.

At the Petitioner's trial, the State presented evidence that the collision took place after dark at the crest of a hill on a two-lane highway. The Petitioner was travelling south on Highway 108, and passing was prohibited due to lack of visibility past the hill. Approximately 632 feet before the collision site, Fred Lusk Road intersected the highway on the Petitioner's right. The Chevy S-10, driven by Ms. Desiree Underhill, turned from Fred Lusk Road onto the highway in front of the Petitioner. Both Ms. Underhill and her passenger testified that she stopped at the stop sign and looked for traffic before turning. Ms. Underhill then noticed the Petitioner behind her, attempting to pass her on the hill. Ms. Underhill testified that she was travelling at approximately 55 miles per hour but that she slowed down to facilitate the Petitioner's attempt to pass.

At the top of the hill, travelling southbound in the northbound lane, the Petitioner struck Ms. Lockhart's northbound Pontiac. The Chevy S-10 was also impacted and ultimately flipped. The distraught Petitioner told an officer on the scene, "It was my fault. It was my fault." He stated to the officer "that he was passing another vehicle, and that he didn't see any headlights and he thought he had room." He did not say that the Chevy S-10 pulled out in front of him.

Both the State and the defense presented experts in accident reconstruction. The State's expert, Trooper Kevin Curtis, testified that the Pontiac was equipped with an airbag control module which could record data for five seconds prior to a collision. The data reflected that the Pontiac was traveling 63 miles per hour five seconds prior to the crash, that it slowed during that five-second period, and that it was traveling at 55 miles per hour immediately before impact. Ms. Lockhart had activated the brakes one second before impact, but the antilock system was not activated, indicating that she did not have time to depress them completely. The State's expert also testified that he calculated that the Petitioner was travelling at 66 miles per hour prior to the collision and that the Chevy S-10 was travelling between 47 and 50 miles per hour. He testified that if the Petitioner were traveling at 65 miles per hour, it would take 6.5 seconds for him to travel from the intersection to the collision site.

The State's expert testified on cross-examination that he did not believe it was plausible that the Chevy S-10 went from a complete stop to 55 miles per hour in 300 feet with a four-cylinder engine. He agreed that the Chevy S-10 probably did not stop completely at the stop sign. He testified, however, that if the Chevy S-10 had pulled out immediately in front of the Petitioner, he would have expected to see tire marks at that

area of the road. On redirect examination, he testified that if the Chevy S-10 went through the stop sign at 15 miles per hour, it would have taken the Petitioner approximately one second to pass it, and he testified that the Chevy S-10 could not have made the turn going 30 miles per hour or above. He opined that speed was not a primary factor in the accident; the primary factor was passing in a no-passing zone.

The Petitioner's expert testified that due to the nature of the impact, which was not "barrier equivalent," the pre-impact speeds of the vehicles could not be reliably determined. He agreed with the State's expert that the Chevy S-10 would not have been able to get from a complete stop to 55 miles per hour in the distance between the intersection and collision site. He testified that if the Chevy S-10 had pulled out in front of the Petitioner when he was less than one hundred feet from it, that would be consistent with a sudden emergency situation. The Petitioner could not have evaded the Chevy S-10 to the right without running into an embankment. The Petitioner's expert testified that if Ms. Lockhart's Pontiac had not been speeding, the severity of the impact would have been lessened, and there may have been room to avoid the collision entirely.

The Petitioner chose not to testify. The trial court conducted a hearing, during which the Petitioner acknowledged that he understood his rights and that he was solely responsible for the decision not to testify. The court informed the Petitioner that "the whole purpose of this is to make sure that no one, after the trial is over, decides that they really wanted to take the stand and says that … the only reason they didn't is because their lawyer kept them off."

During closing argument, the prosecutor referred several times to an absence of proof that the Chevy S-10 pulled out in front of the Petitioner. He also argued that no evidence was presented regarding where the Petitioner's vehicle was when the Chevy S-10 turned onto the highway. The Petitioner's attorney argued that the Petitioner was responding to a sudden emergency created when the Chevy S-10 "whip[ped] out in front of him." The prosecutor objected that this argument was not based on facts in the record, and the trial court instructed trial counsel to "[b]ack up from that a little bit." Trial counsel continued to argue that the Petitioner's actions were not reckless because he was trying to avoid the Chevy S-10, which turned out in front of him and then sped up as he tried to pass. He also argued that the Petitioner was not the proximate cause of the victim's death because both the Chevy S-10's failure to yield and the Pontiac's speed contributed to the accident. The jury convicted the Petitioner as charged, and he received an aggregate sentence of twelve years and six months. On appeal, the Petitioner argued that the evidence was insufficient to support the findings of recklessness and proximate causation and that the trial court should not have limited closing argument. *State v. Kenneth Krasovic*, No. M2013-00607-CCA-R3-CD, 2014 WL 2931694, at *3 (Tenn.

Crim. App. June 26, 2014) *perm. app. denied* (Tenn. Nov. 21, 2014). This court rejected the arguments and affirmed the convictions. *Id.* at \*7.

## Post-conviction

The Petitioner filed a post-conviction petition for relief based on counsel's presentation of inadequate expert testimony, counsel's advice not to testify, and counsel's failure to object to closing argument.

At the post-conviction hearing, the Petitioner testified he chose not to testify at trial based on trial counsel's advice. He acknowledged he had prior convictions for second degree murder, conspiracy to commit first degree murder, and two aggravated robberies. He did not recall the colloquy regarding his decision not to testify and asserted that the judge told him he could not "expunge" his conviction unless he testified. He stated, "I know from my experience with the courts that if you do anything against your attorney you're shot — you got to do what they say." However, he acknowledged that his attorney did not prevent him from testifying but merely advised him against it.

The Petitioner testified that the collision occurred because the Chevy S-10 failed to stop at the stop sign and he was forced into the other lane. He was trying to finish passing, "and that's when the car hit me." He also testified that during a driver training course, he had been instructed that if a vehicle pulled suddenly into his lane, he should go around it. He disputed the order in which his vehicle hit the other two vehicles involved in the collision.

The Petitioner acknowledged that he had admitted fault at the scene but stated he was disoriented and was concerned about the homicide victim's husband, who was "going crazy out there." He also acknowledged that he did not tell the officer at the scene that he was in the process of evading the Chevy S-10. The Petitioner asserted that Trooper Curtis did not testify at trial.

The Petitioner acknowledged speaking with another law enforcement officer, Agent Scott Dickson, at the hospital. He did not dispute that he told Agent Dickson that "instead of me slowing down like I should have, I tried to go around him and the next thing I know the air bags deployed and I ended up in the ditch." He acknowledged telling Agent Dickson that he was going 60 miles per hour prior to passing the Chevy S-10. He also acknowledged saying that he was going between 60 and 70 miles per hour while he was passing. He explained that he got "the shakes" and felt that he was going into shock while speaking to Agent Dickson. He acknowledged that he was in the hospital at the time and was never treated for shock.

The Petitioner's statement to Agent Dickson, which was not introduced at trial, was introduced at the post-conviction hearing. The Petitioner told Agent Dickson, "[I]t never [dawned] on me, but I really shouldn't have passed there," and explained that he chose to pass because the Chevy S-10 "c[a]me out there so slow and that's why."

Ms. Ardena Garth, a former public defender, testified that in her opinion, trial counsel did not meet a reasonable standard of care. She testified that trial counsel failed to raise a defense of "sudden emergency" or to request that the jury be charged with the defense. She also testified that trial counsel erred in not asking his expert to meet with the Petitioner in order to introduce the Petitioner's version of events. When asked if trial counsel had a duty to advise the Petitioner to testify, Ms. Garth responded, "I think maybe that's my position." She also testified that trial counsel failed to object to the prosecution's statements that there was no proof of sudden emergency, and she asserted that these statements were a comment on the Petitioner's assertion of his Fifth Amendment rights. On cross-examination, she was unable to define the standard of care but stated, "you know it when you see it."

The Petitioner next presented the expert testimony of Mr. Andrew Ridnour, a certified accident reconstructionist. Mr. Ridnour stated that he disagreed with the experts at trial who had testified that the Petitioner could have completed his passing maneuver prior to the crest of the hill if the Chevy S-10 had pulled suddenly into his lane. He stated that the Chevy S-10 had a V-6 engine, which made it more powerful than the prior experts assumed. He testified that the Chevy S-10 would have accelerated quickly as the Petitioner was passing, and that the Petitioner would have had only half of a second to decide whether or not to get back into his lane. Mr. Ridnour's model assumed that the Petitioner was travelling at 55 miles per hour despite statements the Petitioner made to the contrary to law enforcement. Mr. Ridnour stated that ten percent of drivers would have made the same decision the Petitioner did.

Trial counsel testified that his strategy was twofold: to assert a defense of "sudden emergency" based on the Chevy S-10 failing to yield at the stop sign and to assert that the Pontiac's speed defeated a finding of proximate cause. He acknowledged that he was not able to get all the testimony from his expert into evidence because the trial court limited his hypothetical questions. Trial counsel stated that he felt that the testimony of both experts that the Chevy S-10 probably did not come to a complete stop was helpful to his case and that his expert's testimony regarding the Pontiac's speed and causation was also helpful.

Trial counsel discussed with the Petitioner and his family the decision not to testify. He advised the Petitioner not to testify because the trial court had ruled that the State would be able to introduce evidence regarding the Petitioner's armed robbery

convictions out of Texas. Trial counsel felt that the record contained a factual basis to argue that the Chevy S-10 had failed to yield at the stop sign, since both experts testified that the testimony of Ms. Underhill and her passenger was inconsistent with the physical proof. Trial counsel also felt that the Petitioner might not present well on cross-examination, particularly since he told trial counsel prior to trial that the Chevy S-10 had caused the collision by hitting his vehicle. Trial counsel confirmed that the State had chosen not to introduce the Petitioner's statements to Agent Dickson but that those damaging statements would have been put into evidence if the Petitioner had testified. Trial counsel testified that he did not object to the prosecutor's comments during closing argument because he did not think they were improper or a commentary on the Petitioner's choice not to testify.

The post-conviction court denied relief. The post-conviction court found that trial counsel presented helpful expert testimony and was in no way deficient for not finding a more favorable expert. The post-conviction court also found that trial counsel's advice to the Petitioner not to testify was a reasonable strategic decision based on the Petitioner's "significant credibility issues." The post-conviction court additionally found that trial counsel was not deficient in choosing not to object to the prosecutor's closing argument. The Petitioner appeals.

## ANALYSIS

The Petitioner argues on appeal that trial counsel was deficient because he failed to present "the defense of sudden emergency," in that he introduced inadequate expert testimony and advised the Petitioner not to testify. The Petitioner's appellate brief devotes no argument or citations to trial counsel's failure to object to closing argument. The State asserts that the issue is waived insofar as it is raised, and we agree. *See* Tenn. Ct. Crim. App. R. 10(b).

The Post-Conviction Procedure Act provides for relief when a petitioner's "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of witness, the weight and value of witness testimony, and the resolution of factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of fact and law reviewed de novo. *Id.*

# I. Ineffective Assistance of Counsel

The Petitioner asserts that his convictions are void because he was denied his right to the effective assistance of counsel. Under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused is guaranteed the right to effective assistance of counsel. *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016). To prevail on a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick*, 454 S.W.3d at 457 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

"Establishing deficient performance requires showing 'that counsel's representation fell below an objective standard of reasonableness,' which standard is measured by 'professional norms' prevailing at the time of the representation." *Garcia v. State*, 425 S.W.3d 248, 256-57 (Tenn. 2013) (quoting *Strickland,* 466 U.S. at 688). As long as counsel's representation was "'within the range of competence demanded of attorneys in criminal cases,'" counsel will not be deemed to have performed deficiently. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Deficient performance requires a showing of errors so serious that "'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland,* 466 U.S. at 687).

The reviewing court should not second-guess strategic choices or measure counsel's performance by "20-20 hindsight." *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). In reviewing counsel's professional decisions, a "'fair assessment … requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Goad*, 938 S.W.2d at 369 (quoting *Strickland*, 466 U.S. at 689). Strategic decisions based on a thorough investigation of law and facts relevant are virtually unchallengeable. *Felts*, 354 S.W.3d at 277. The failure of a particular strategy does not establish unreasonable representation. *Cauthern v. State*, 145 S.W.3d 571, 600 (Tenn. Crim. App. 2004). "Deference to counsel's tactical choices, however, applies only if such choices are within the range of competence required of attorneys in criminal cases." *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004).

In determining prejudice, the reviewing court must decide if there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn.

2011) (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is "'a probability sufficient to undermine confidence in the outcome.'" *Calvert*, 342 S.W.3d at 486 (quoting *Strickland*, 466 U.S. at 694).

In general, the Petitioner asserts that his attorney failed to properly develop "the defense of sudden emergency." We note that the Legislature has adopted certain statutory defenses applicable to criminal law and that "sudden emergency" is not one of them. *See* T.C.A. §§ 39-11-501 to -505, -601 to -622. Instead, "sudden emergency" is a civil doctrine which recognizes that a person confronted with an emergency is "'not expected to exercise the same accuracy of judgment as one acting under normal circumstances.'" *Knowles v. State*, 49 S.W.3d 330, 337 (Tenn. Ct. App. 2001) (quoting *McCall v. Wilder,* 913 S.W.2d 150, 157 (Tenn. 1995)). The doctrine "'no longer constitutes a defense as a matter of law but … must be considered as a factor in the total comparative fault analysis.'" *Id.* (quoting *McCall,* 913 S.W.2d at 157).

Trial counsel, while using the term "sudden emergency," presented the jury with the theory that the Petitioner's acts were not reckless because the risk he undertook by changing lanes was justifiable based on the fact that his alternative course of action would have been to collide with the Chevy S-10. He also argued that the Petitioner was not the proximate cause of the collision due to the negligent acts of the two other vehicles involved in the collision. We proceed to address whether the post-conviction court erred in determining that there was no deficiency in the specific errors attributed by the Petitioner to trial counsel.

### A. Expert Testimony

The Petitioner asserts that trial counsel failed to properly develop his theory of the case because trial counsel hired an expert who did not interview the Petitioner and whose testimony was "essentially useless." However, the post-conviction court found that the Petitioner's expert at trial gave helpful testimony and that trial counsel was not obligated to find a more favorable expert.

The Petitioner's expert at trial testified that he believed the Chevy S-10 failed to stop at the stop sign. He stated that if it had entered the road within one hundred feet of the Petitioner, the Petitioner would have been presented with a "sudden emergency." The expert also testified that the accident might possibly have been avoided if the victim's Pontiac had not been speeding. Mr. Ridnour, the Petitioner's post-conviction expert, testified that the Petitioner would not have been able to complete a passing maneuver if he had been forced into the northbound lane by the Chevy S-10 and that he would have had only half a second to decide whether to return to his proper lane. The post-conviction court found that this testimony was based on unclear variables, such as an

assumed speed for the Petitioner, and was inconsistent with the evidence at trial. The Petitioner's statements at the scene and at the hospital indicated that he had made a conscious, though erroneous, decision to pass the Chevy S-10, not that he had been forced into opposing traffic.

In any event, however helpful Mr. Ridnour's testimony might have been, "[t]he Constitution does not require attorneys to 'shop around' for more favorable expert testimony." *Jon Hall v. State*, No. W2003-00669-CCA-R3-PD, 2005 WL 22951, at *34 (Tenn. Crim. App. Jan. 5, 2005); *see Kennath Henderson v. State*, No. W2003-01545-CCA-R3-PD, 2005 WL 1541855, at *42 (Tenn. Crim. App. June 28, 2005); *Poyner v. Murray*, 964 F.2d 1404, 1419 (4th Cir. 1992) ("The mere fact that [the defendant's] counsel did not shop around for a psychiatrist willing to testify to the presence of more elaborate or grave psychological disorders simply does not constitute ineffective assistance."). Trial counsel obtained an expert who presented evidence favorable to the Petitioner. This certainly falls "'within the range of competence demanded of attorneys in criminal cases.'" *Felts*, 354 S.W.3d at 276 (quoting *Baxter*, 523 S.W.2d at 936). We agree with the post-conviction court that trial counsel's performance in obtaining expert testimony was not deficient.

## B. Advice to Refrain from Testifying

The Petitioner next asserts that trial counsel performed deficiently in advising him not to testify. The Petitioner argues that at the close of the State's proof, the Petitioner was the only witness remaining who could have introduced evidence that the collision was caused by the Chevy S-10's failure to stop. Trial counsel testified that, even without the Petitioner's testimony, he thought he would be able to argue that the Petitioner was forced into the other lane based on the testimony of the two expert witnesses that the Chevy S-10 could not have gone from a complete stop to the speed limit in the distance from the intersection to the collision site.

The post-conviction court found that the Petitioner demonstrated "significant credibility issues." Evidence at the post-conviction hearing established that if the Petitioner had testified, his prior violent offenses would have been admitted. Likewise, the Petitioner's statements to Agent Dickson, in which the Petitioner admitted that he should have slowed down but instead chose to pass where he "really shouldn't have," would likely have come into evidence. Trial counsel noted that he was concerned because the Petitioner indicated prior to trial that he wanted to testify to facts that would not have been supported by the physical evidence. The Petitioner's testimony at the post-conviction hearing was frequently inaccurate, and the post-conviction court found that he did not have a "good memory about things." Trial counsel's advice to the Petitioner not to testify was an eminently reasonable strategic decision which provides no basis for

finding deficiency. *See Bates v. State*, 973 S.W.2d 615, 636-37 (Tenn. Crim. App. 1997) (concluding that advice not to testify was sound trial strategy considering the potential impeachment material and the petitioner's demeanor on the stand).

## CONCLUSION

Because the Petitioner has demonstrated no deficiency in trial counsel's conduct, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE